## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**Estate of Donald Woods, Brenice
Gardner, as the personal
representative and administrator
of this wrongful death claim on
behalf of decedent, Donald
Woods, and on behalf of Morgan
Woods, Sr., decedent's father,**

     **Plaintiff,**

**v.**                                                 **No. 15-cv-635-MCA-LAM**

**Board of County Commissioners
of Lea County, New Mexico; Lea
County Detention Center; Paddy
Downey, in his official capacity as
Warden of the Lea County
Detention Center; NOR-LEA
GENERAL HOSPITAL;
JOHN DOES I-X; JANE DOES
I-X; and BLACK and WHITE
ENTITIES I-X**

     **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Lea County Defendants' Motion to
Dismiss Municipal Liability Claims Based on Custom or Policy, Supervisory Liability, or
Failure to Train in Count One of Plaintiffs'* [sic] *Complaint for Failure to State a Claim
for Which Relief Can Be Granted Under Fed. R.Civ.P. 12(b)(6)* filed January 8, 2016.
[Doc. 13]  The Court has considered the parties' submissions, the record, the relevant
law, and is otherwise fully advised in the premises.

**BACKGROUND**

Donald Woods died while he was incarcerated in Lea County Detention Center (LCDC) in Lovington New Mexico.   [Doc. 22 ¶¶ 5, 23, 25-28]  This lawsuit, brought by the personal representative of Mr. Woods' estate, arises from the circumstances surrounding Mr. Woods' death.  [Doc. 22 ¶¶15-39]  As alleged in Plaintiff's *Second Amended Complaint* (the *Complaint*), those circumstances were the following.  [Doc. 22]

Mr. Woods was arrested by Hobbs Police Department on July 22, 2013 for trespassing at a convenience store.  [Doc. 22 ¶ 15]  Upon his arrest he was transported to LCDC where he was booked into custody.   [Doc. 22 ¶¶ 16, 23]

Mr. Woods "had a long history of schizophrenia/bipolar disorder" and high blood pressure.  [Doc. 22 ¶¶ 17-18] Due to his conditions, Mr. Woods required several psychotropic and blood pressure medications.  [Doc. 22 ¶ 19]  At the time of his arrest, Mr. Woods was experiencing psychosis.  [Doc. 22 ¶ 44]

"LCDC . . . was fully aware of [Mr. Woods'] medical history and fully aware that he required medications"; however, rather than transporting Mr. Woods to a medical facility for evaluation and treatment, LCDC personnel placed him in a cell by himself with no medications and no observation.  [Doc. 22 ¶¶ 17, 22-23]  Owing to his mental health history, upon being booked into LCDC Mr. Woods received a "special classification" pursuant to which LCDC officers were required to check on his wellbeing every thirty minutes.  [Doc. 22 ¶ 21]

LCDC and Nor-Lea Hospital (the Hospital) have a contractual agreement pursuant to which the Hospital provides "on-site [h]ealth [c]are to [o]ffenders incarcerated in the

LCDC[.]"  [Doc. 22 ¶ 20]  Under the terms of that agreement, the Hospital is required to screen all inmates within one hour of "presenting to the facility."  [Doc. 22 ¶ 24] Although Mr. Woods had been booked into LCDC on July 22, as of July 26 he had not received the required screening or any medical attention, nor had he received any of his required medications.  [Doc. 22 ¶ 25]

After head count on July 26, Mr. Woods made several requests for assistance by repeatedly "buzz[ing] the intercom" but he was ignored by the LCDC staff.  [Doc. 22 ¶¶ 26, 34-35]  Between the last head count that evening and the following day, LCDC detention officers did not make any rounds, and Mr. Woods was not given any medical attention.  [Doc. 22 ¶ 27]  At breakfast time on July 27, Mr. Woods was found dead in his cell.  [Doc. 22 ¶ 28]  He had suffered a fatal heart attack.  [Doc. 22 ¶ 35]

Plaintiff filed the present lawsuit.  Among other things, Plaintiff brought a claim under 42 U.S.C. § 1983 on the ground that Defendants exhibited deliberate indifference to Mr. Woods' medical and mental health needs thereby violating rights guaranteed to him by the Eighth and Fourteenth Amendments to the Constitution.  [Doc. 22 p. 6-11] This claim is the only one presently at issue.

The Lea County Defendants—Lea County, New Mexico, Lea County Detention Center, and Paddy Downey (who has been sued in his official capacity as the warden of LCDC) seek dismissal of the "municipal liability claims" against them.  [Doc. 13 p. 1] As grounds for their *Motion*, the Lea County Defendants contend that the *Complaint* fails to set forth any facts demonstrating that Mr. Woods' death was caused by a municipal custom or policy.  [Doc. 13]  Although Plaintiff amended the *Complaint* after the Lea

County Defendants[1] filed their *Motion to Dismiss*, the Defendants' position on the matter of dismissal was not affected by the amendment.  [See Doc. 25]

**Standards Governing a Rule 12(b)(6) Motion to Dismiss**

Fed. Civ. P. Rule 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand a motion to dismiss, a complaint must contain sufficient allegations of fact, taken as true, "to state a claim for relief that is plausible on its face."  *In Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).  In applying this test, the Court accepts as true "all plausible, non-conclusory, and non-speculative" facts alleged in the complaint.  *Shrader v. Al Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Accordingly, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest [that] the defendant is liable."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

**Standards Governing § 1983 Claims Against Municipal Entities**

A municipality has a constitutional obligation to provide medical care, including psychological and psychiatric care, to inmates.  *See Ramos v. Lamm*,

---

[1] Although the Lea County Defendants are not the only Defendants in this matter, for ease of reference throughout the remaining portions of this Opinion, the Court will refer to them as "the Defendants."  The Court's discussion and holding herein applies exclusively to the three Lea County Defendants who have joined the present *Motion to Dismiss*.

639 F2d 559, 574 (10th Cir. 1980) (recognizing that a municipality has a constitutional obligation to provide medical treatment, dental care, and psychological or psychiatric care to inmates).  Where, as here, the inmate whose care is in question was a pretrial detainee, this right is guaranteed by the Eighth and Fourteenth Amendments. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)  ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." (citation omitted)).

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) the Supreme Court held that a municipality can be sued under § 1983 where unconstitutional action that led to the lawsuit "implements or executes a policy statement . . . or decision officially adopted and promulgated by [its] officers.   In other words, a "municipality may only be held liable under § 1983 for its own unconstitutional or illegal policies"; it may not be held liable under a theory of *respondeat superior* "solely because its employees inflicted injury on the plaintiff."  *duBois v. Payne Cty. Bd. of Cty. Commr's*, 543 Fed.Appx. 841, 848 (10th Cir. 2013); *see Monell*, 436 U.S. at 690 (stating that municipalities "cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, to state § 1983 claim against a municipality, the plaintiff must identify a municipal policy or custom that was the cause of the injury, "then show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *duBois*, 543 Fed.Appx. at 849.

### A.  Identifying the Municipal Policy or Custom

There are a number of ways in which a plaintiff may satisfy the "official policy" requirement of a § 1983 claim against a municipality.  "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted).  Yet regardless of the form that the official policy took, it is incumbent upon the plaintiff, at the pleading stage to allege facts that plausibly demonstrate that such a policy in fact prevailed.  *See Griego v. City of Albuquerque*, 100 F.Supp.3d 1192, 1213 (D.N.M. 2015) (stating that it is inadequate to "simply allege that there is a policy in place"); *see Strauss v. City of Chi.*, 760 F.2d 765, 767 (7th Cir. 1985) ("A complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand.").  A mere conclusory allegation that a policy exists is treated as a legal conclusion, and is not taken at face value.  *See Griego*, 100 F.Supp.3d at 1213.

Where the at-issue policy is a formal or written directive, the plaintiff may satisfy the pleading requirement by alleging what the policy is and where it is codified.  *Griego*, 100 F.Supp.3d at 1213.  Where the policy is informal—for example, one that is reflected only in "a well-settled custom or practice," an allegation that a policy exists must be supported by additional factual allegations.  *Id.* at 1215-16 (stating that at the pleading stage, an informal policy may be shown by allegations that there have been several prior occurrences of the at-issue

constitutional deprivation, attestations by municipal employees that such a policy exists, or other evidence).

## B.  Establishing Deliberate Indifference

In the municipal liability context, "deliberate indifference" is measured objectively. *duBois*, 543 Fed.Appx. at 849.  It requires a showing that "the municipality ha[d] actual or constructive notice that its action or failure [was] substantially certain to result in a constitutional violation, and it consciously and deliberately [chose] to disregard the risk of harm."  *Id.*  "Although a single incident generally will not give rise to liability, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action."  *Id.*  The policy itself "must operate as the moving force behind the violation[.]"  *duBois*, 543 Fed.Appx. at 849.

## C.   Application in the Present Matter

The foregoing standards apply to each of the Defendants.  *Shue v. Laramie Cty. Det. Ctr.*, 594 Fed.Appx. 941, 943-44 (recognizing that § 1983 claims against a county, a county detention center, and an official sued in his official capacity are considered suits against the municipality); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . generally represent . . . another way of pleading an action against an entity of which an officer is an agent.").

**Analysis of Plaintiff's Allegations**

Plaintiff's § 1983 claim stems from an alleged series of failures committed by LCDC staff.   According to the *Complaint* LCDC officers violated LCDC policies by failing to (1) check on Mr. Woods every thirty minutes, and (2) cause Mr. Woods to undergo a medical evaluation or provide him with the medication that he required.  [Doc. 22 ¶¶ 29, 31, 33] Plaintiff alleges that the latter failure was particularly egregious in light of the fact that LCDC staff knew that Mr. Woods had a history of mental illness for which he had previously been hospitalized, and that he was experiencing psychosis when he was arrested.  [Doc. 22 ¶ 44]  Further, when Mr. Woods, having been deprived of blood pressure medication by LCDC staff, was suffering from a heart attack, and he repeatedly requested help, he was ignored by LCDC guards.  [Doc. 22 ¶ 39]

Plaintiff alleges that these failures "reflect[] an endemic problem with LCDC, through inadequate policies relating to the care and custody of mentally ill individuals and inmates requiring medications to live, as well as deliberate indifference in the training and supervision of correctional officers with respect to the care and custody of these individuals."  [Doc. 22 ¶ 45]  Plaintiff also alleges that "Defendant Paddy Downey personally demonstrated deliberate indifference in his decisions regarding the policies regarding the care and custody of mentally ill individuals and administering medications within [LCDC], as well as with respect to the training and supervision of detention officers regarding the care and custody of mentally ill individuals."  [Doc. 22 ¶ 47]  And Plaintiff alleges further that "[a]s a result of the foregoing policies, practices, and customs, as well as the conduct of

the individual defendants (both supervisory and non-supervisory) . . . [Mr. Woods] died while in the custody and care of Defendants[.]"  [Doc. 22 ¶ 49]

　　　As noted earlier, a municipality may not be held liable under a theory of *respondeat superior*.  Accordingly, in the context of claims against a municipality, it is necessary to distinguish the "acts of the *municipality* from the acts of the *employees* of the municipality" thereby limiting the municipality's liability to actions for which it is actually responsible.  *Schneider*, 717 F.3d at 770 (explaining the purpose of the "official policy requirement").  In keeping with this principal, our Supreme Court and our Tenth Circuit have recognized that a showing of negligence or error on the part of a municipal employee does not suffice to state a claim against a municipality.  *See e.g. City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)  ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*."); *Moss v. Kopp*, 559 F.3d 1155, 1168-69 (10th Cir. 2009)(rejecting the argument that unlawful conduct by a sheriff's deputy and a sergeant constituted evidence of an unlawful policy or custom sanctioned by the sheriff or the county).  Guided by these standards, the Court concludes that Plaintiff's reliance on the actions and inactions of LCDC staff to impute liability

to the municipality—including the warden in his official capacity—are legally ineffective.

For example, although Plaintiff alleges that the manner in which Mr. Woods was treated by LCDC staff "reflects an endemic problem" reflective of the municipality's (and the warden's) policies, training, and supervision, she does not allege that similar incidents have occurred in the past, or that the staff's unlawful conduct was taken at the behest of a policymaker. *Moss*, 559 F.3d at 1169 ("[P]roof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show [that] the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued."). Insofar as the *Complaint* is otherwise devoid of allegations that plausibly support an inference that the municipality and the warden have implemented a policy or custom, or provide such inadequate training and supervision that they can be said to have been the "moving force" behind Mr. Woods' maltreatment, the claims against them must be dismissed. *duBois*, 543 Fed.Appx. at 849 (stating that in the municipal liability context, "[t]he official position must operate as the moving force behind the violation, and the plaintiff must demonstrate a direct causal link between the [municipality's action] and the" at-issue deprivation); *Griego*, 100 F.Supp.3d at 1213 (stating that a conclusory allegation that a policy exists is treated as a legal conclusion and is not taken at face value; a plaintiff

alleging the existence of an unconstitutional policy must support the allegation by pleading facts "that, if true, would give rise to a plausible inference that such a policy exists"); *see Collins*, 656 F.3d at 1214 (stating that considering a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest [that] the defendant is liable)."

**CONCLUSION**

For the reasons stated herein, *Lea County Defendants' Motion to Dismiss Municipal Liability Claims Based on Custom or Policy, Supervisory Liability, or Failure to Train in Count One of Plaintiffs'* [sic] *Complaint for Failure to State a Claim for Which Relief Can Be Granted Under Fed. R.Civ.P. 12(b)(6)* filed January 8, 2016 [Doc. 13] is **granted**.

**IT IS SO ORDERED** this 5th day of July, 2016 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**

11